UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRAL DRM LLC,<br><br>   Plaintiff,<br><br>v.<br><br>FRANCISCO MORANTE FUENTES,<br><br>   Defendant. | Case No. 3:23-cv-05045-JSC<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT AND DISMISSING ACTION FOR LACK OF STANDING**<br><br>Dkt. Nos. 64, 74 |

Viral DRM LLC brings copyright infringement and related claims against Francisco Morante Fuentes alleging he downloaded and copied Viral DRM's copyrighted materials from YouTube, and then re-uploaded infringing versions of its copyrighted media content to his YouTube channel Fulltops. This is one of several related copyright infringement actions. *See* Case Nos. 23-4300, 23-5594, 23-5977, 23-6261, 23-6598, 24-731, 24-733, 24-739, 24-746, 24-747. After Defendant failed to respond to the Amended Complaint, Viral DRM moved for entry of default, which the Clerk granted, and now moves for entry of default judgment. (Dkt. Nos. 60, 64.[1]) At the hearing on Viral DRM's motion for default judgment, the Court raised an issue regarding Viral DRM's standing to bring the copyright infringement claims and directed Viral DRM to submit a copy of its license with the copyright holders. (Dkt. No. 71.) After reviewing Viral DRM's response, the Court issued an Order to Show Cause (OSC) as to Viral DRM's standing to bring the copyright infringement claims at issue here. (Dkt. No. 74.)

Viral DRM has filed the exact same OSC response in each case—without any citations to the record or even tailoring the responses to the facts of the particular case. *See* Case Nos. 23-

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

4300, Dkt. No. 112; Case No. 23-5045, Dkt. No. 78; Case No. 23-5594, Dkt. No. 75; Case No. 23-5977, Dkt. No. 61; Case No. 23-6598, Dkt. No. 56; Case No. 24-731, Dkt. No. 39; Case No. 24-733, Case No. 24-739, Dkt. No. 42; Case No. 24-746, Dkt. No. 49; Case No. 24-747, Dkt. No. 42. Viral DRM's response fails to demonstrate it has standing to bring the claims here. Thus, for the reasons set forth below and in its prior OSC, the Court DENIES the motion for default judgment and DISMISSES this action.

**DISCUSSION**

Viral DRM is "a syndicator of award-winning videographic content created by talented videographers." (Dkt. No. 42 at ¶ 14.) According to the Amended Complaint, Viral DRM is "affiliated" with WXChasing LLC, "a video production company that creates some of the videographic Works that Viral DRM syndicates and licenses," and Live Storms Media LLC, "a licensing broker of video content owned by or exclusively licensed to Viral DRM and WXchasing." (*Id.* at ¶ 15.) Viral DRM alleges it "was the exclusive licensee of the Works at issue in this case" and it "registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a)." (*Id.* at ¶¶ 38, 39.) The Registration Certificates attached to the Amended Complaint, however, show the works at issue are registered to "John Michael Sibley" and "Michael Brandon Clement." (Dkt. No. 42-2.)

According to Clement's declaration in support of the motion for default judgment, he is a principal and one of the owners of Viral DRM. (Dkt. No. 64-2 at ¶ 1.) Clement attests "[a]ll the works are exclusively licensed to Viral DRM for distribution and syndication pursuant to written agreements that provide Viral DRM with the necessary rights to sue for the infringements at issue in this case." (*Id.* at ¶ 8.) Following the hearing on the motion for default judgment, Viral DRM filed its "Exclusive Management Agreement" purportedly with the videographer holding the copyright. (Dkt. No. 72-3.) In what has been a common practice in this action, Viral DRM submitted the wrong agreements; that is, an agreement with a videographer other than Clement or Sibley. Viral DRM has since filed the correct Agreements and a response to the Court's Order to Show Cause as to its standing to bring the claims here. (Dkt. Nos. 75-1, 78.)

2

### A.  Copyright Infringement under Section 501(b)

Section 501(b) of the Copyright Act specifies who has standing to sue for infringement: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Section 106 sets forth an "exhaustive list" of those exclusive rights. *Silvers v. Sony Pictures Entm't, Inc*., 402 F.3d 881, 887 (9th Cir. 2005) (en banc) (citing 17 U.S.C. § 106). These include:

> the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission.

*Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1002 (9th Cir. 2015) (quoting 17 U.S.C. § 106). In *Minden*, the Ninth Circuit held "either an assignment (which transfers legal title to the transferee) or an exclusive license (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for the purposes of the Act." *Minden*, 795 F.3d at 1003 (emphasis in original). In contrast, a "'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (citing 17 U.S.C. § 101).

According to the Agreement between Viral DRM and Clement/Sibley, the copyright holder—referred to as a "Content Creator"—grants Viral DRM:

> 1. <u>Grant of Exclusive Agency Rights</u>. Content Creator hereby grants to VDRM the exclusive agency rights to manage and administer any content submitted by Content Creator to VDRM (the "Works"), including but not limited to the right to search for copyright infringements of the Works, to register copyrights for the Works with the United States Copyright Office; to authorize VDRM's attorneys to negotiate settlements, issue takedown notices pursuant to the Digital Millennium Copyright Act or otherwise file claims on behalf of the Content Creator in an effort to enforce the copyrights in and to the Works; Content Creator grants VDRM exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.

(Dkt. No. 75-1 at p. 3 ¶ 1; Dkt. No. 75-1 at p. 10 ¶ 1.) The Content Creator otherwise retains all copyright and ownership rights in the work. (*Id.* at ¶ 3.) Sibley has submitted a declaration indicating he has also an agreement with Live Storms Media to act as his licensing agent. (Dkt.

No. 78-6 at ¶ 6.)

In response to the Court's OSC, Viral DRM circularly argues "[t]he grant of 'exclusive agency rights' in the agreements between videographers and Viral DRM are sufficient to appoint Viral as exclusive owner of at least one of the § 106 rights and provide Viral with standing to sue" because in order to "fulfill its responsibility to 'manage and administer any content'" Viral DRM "must be empowered to 'display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.'" (Dkt. No. 78 at 4-5.) That Viral DRM believed its licensing agreements would allow it to bring the copyright infringement claims before the Court does not confer standing under Section 501. Statutory standing cannot be willed into existence. In this case, it is a matter of contract and it exists or it does not. As the Court previously noted:

> Giving Viral DRM the rights necessary to enforce the videographer's copyright, is not the same as the exclusive right to "authorize third parties to reproduce, distribute, and display the photographs" required to have standing to bring a copyright infringement action. *Minden* [*Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1005 (9th Cir. 2015)]; *see also Silvers* [*v. Sony Pictures Ent., Inc*., 402 F.3d 881, 884 (9th Cir. 2005)] ("The right to sue for an accrued claim for infringement is not an exclusive right under § 106."). Unlike the agreement in *Minden*, the Agreement does not give Viral DRM the exclusive right to authorize third parties to reproduce, distribute, and display the copyrighted video.

(Dkt. No. 74 at 4.) Accordingly, under binding Ninth Circuit precedent, Viral DRM lacks standing to bring a copyright infringement claim under Section 501(b).

### B.   DMCA False Counternotices under Section 512(f)

Viral DRM's second claim for relief alleges Defendant violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), by submitting false counternotices in response to Viral DRM's takedown notice.

In its motion for default judgment, Viral DRM seeks damages for six violations of this statute. (Dkt. No. 64-1 at 20.) According to a chart attached the motion, the "author"—presumably videographers—for these works are: Chris Tangey, Reed Timmer, Brandon Clement, John Sibley, and Daniel Shaw. (Dkt. No. 64-3 at 2.) The takedown notices, however, list the copyright owner for five of these videos as:

- Copyright Owner Name (Company Name if applicable): Viral DRM
- Your Full Legal Name (Aliases, usernames or initials not accepted): Michael Clement
- Your Title or Job Position (What is your authority to make this complaint?): Digital Rights Manager

(Dkt. No. 42-3 at 3-13.)  And for the sixth it says:

- Copyright Owner Name (Company Name if applicable): Daniel Shaw / News Media Network / Viral DRM
- Your Full Legal Name (Aliases, usernames or initials not accepted): Daniel Shaw
- Your Title or Job Position (What is your authority to make this complaint?): Rights Manager

(Dkt. No. 42-3 at 14.)  Viral DRM has not submitted licensing agreements for Tangey, Timmer, or Shaw.  (Dkt. No. 75-1.)  Each attest they have agreements with Viral DRM.  (Dkt. No. 78-3, Tangey Decl. at ¶¶ 3-4 (reciting language identical to that quoted above in Paragraph 1 of Clement's Agreement with Viral DRM); Dkt. No. 78-4, Timmer Decl. at ¶¶ 3-4 (same); Dkt. No. 78-9 at ¶¶ 3-4 (same).)  Shaw's declaration makes no reference to the "News Media Network" listed in the above takedown notice and there is no other indication of his relationship to Viral DRM.  (Dkt. No. 78-9.)  Sibley's declaration indicates he has licensing agreements with both Viral DRM and Live Storms Media although the agreement with Live Storms Media is not attached.  (Dkt. No. 78-6 at ¶¶ 3-4.)

Section 512(f) authorizes the "copyright owner or copyright owner's authorized licensee" to obtain damages for material misrepresentations by the alleged infringer to the online provider.  17 U.S.C. § 512(f).  Because the record is confusing and does not establish who the copyright owner or any authorized licensee is for the Works at issue, Viral DRM has not demonstrated it has standing under Section 512(f).  As a threshold matter, the Amended Complaint does not actually identify the Works at issue for each claim, including the Section 512(f) claim.  While Viral DRM submitted a chart with the motion for default judgment listing the works and author, neither the license agreements, the videographer declarations, nor the OSC response specifically identify the Works at issue and or the videographer associated with any particular Work; instead, they refer to the "Works" and the "videographer," generally.  The videographers have each submitted generic declarations attesting "I am an extreme weather videographer and cinematographer.  The copyrighted work at issue in this case is an extreme weather video I filmed and created."  (Dkt. No. 78-3, Tangey Decl. at ¶¶ 1-2; Dkt. No. 78-4, Timmer Decl. at ¶¶ 1-2; Dkt. No. 78-5, Clement

Decl. at ¶¶ 1-2; Dkt. No. 78-6, Sibley Decl. at ¶¶ 1-2; Dkt. No. 78-7, Olbinski Decl. at ¶¶ 1-2; Dkt. No. 78-8, Hank Decl. at ¶¶ 1-2; Dkt. No. 78-9, Shaw Decl. at ¶¶ 1-2.)  And as discussed above, they have only provided license agreements for Sibley and Clement.  Nor is there any clarity as to the relationship between Viral DRM and Live Storms Media or News Media Network—to whom the videographers might have licensed their work.  To further complicate things, Viral DRM's response to the OSC indicates "[s]ince this case was filed, Viral DRM's status as a partner with L[ive Storms Media] in the syndication and distribution business underwent a change" and because of "disagreements" between Clement and Brett Adair, the manager of [Live Storms Media]" Mr. Adair has assigned his interest in Viral DRM to Clement.  (Dkt. No. 78 at 2-3.)

On this record, it is impossible to unravel the web of connections between all the entities and individuals here and determine the relationship between the entities and individuals involved with the copyrighted works at issue.  Viral DRM has thus not demonstrated its standing to bring a claim under Section 512(f).

### C.   Removal and Misrepresentation of CMI under Sections 1202(a), (b)

Viral DRM's 17 U.S.C. §§ 1201, 1202 claims allege the CMI watermarks identify the Works as the property of Live Storms Media. (Dkt. No. 42 at ¶ 67.)   Under 17 U.S.C. § 1203, [a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation."  For the reasons discussed above and the lack of clarity regarding Live Storms Media's relationship with Viral DRM, the videographers, or the Works at issue, Viral DRM has not demonstrated it has standing to bring a claim regarding the removal of Live Storms Media's watermark from the Works.

\*\*\*

Accordingly, Viral DRM's motion for default judgment is denied and this action is dismissed for lack of standing.  To the extent Viral DRM now seeks leave to name the videographers as "nominal Plaintiffs," it is unclear what this even means. (Dkt. No. 78 at 6.)   In support, Viral DRM cites a Supreme Court case from 1897 discussing in whose name a wrongful death action should be brought.  *See Stewart v. Baltimore & O.R. Co.*, 168 U.S. 445, 449 (1897) (describing the person in whose name a wrongful death suit is brought a "nominal plaintiff.").

When considering whether to grant leave to amend, the Court considers five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Although a district court 'should freely give leave [to amend] when justice so requires,' the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).  Viral DRM has previously been granted leave to amend and has been afforded several opportunities to clarify its claims and the evidence in support of its claims. Each successive filing raises more questions than it answers. It is impossible to tell whether this is sloppiness or something nefarious, but the Court has expended tremendous resources trying to figure it out and has given Viral DRM chance after chance to clarify the record, but each response only muddies the record.   Accordingly, the Court in its discretion denies leave to amend.

## CONCLUSION

For the reasons stated above, the Court DENIES the motion for default judgment and DISMISSES this action given Viral DRM's failure to demonstrate standing to bring the copyright infringement and related claims at issue here.

This Order disposes of Docket Nos. 64, 74.

**IT IS SO ORDERED.**

Dated: March 13, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

7